## MATTER OF KO

### In Section 245 Proceedings

#### A-19892048

*Decided by Deputy Associate Commissioner May 9, 1973*

(1) "Engaging" in an enterprise within the purview of 8 CFR 212.8(b)(4) contemplates full-time engagement to an extent which demonstrates an assumption of risk and responsibility for the direction and control of the enterprise.

(2) The labor certification requirement of section 212(a)(14) of the Immigration and Nationality Act, as amended, is inapplicable to an alien who establishes that he is seeking to enter the United States with the *bona fide* primary purpose of engaging in an enterprise in which he has already invested or is presently investing a substantial amount of capital. Hence, an applicant for adjustment of status under section 245 of the Act who in good faith has invested $18,000 in a retail shoe business which he manages and directs full-time is not within the purview of section 212(a)(14) of the Act, notwithstanding the fact that he also performs the duties of cashier in the store.

(3) A request for a labor certification exemption as an investor filed prior to February 12, 1973, the effective date of the amendment of 8 CFR 212.8(b)(4) (38 F.R. 1379), may be decided under either the regulation as amended on that date or as it existed prior thereto, whichever is more favorable to the alien.

ON BEHALF OF APPLICANT:    Ruth Shamir, Attorney at Law
Suite 1800, 5670 Wilshire Boulevard
Los Angeles, California 90036

This case comes forward on certification for decision by the Deputy Associate Commissioner, Travel Control. The District Director on January 18, 1973, denied the application on the ground that the applicant is subject to the requirement of section 212(a)(14) of the Immigration and Nationality Act, as amended; does not have the labor certification for which that section provides; and is, therefore, inadmissible to the United States for permanent residence. The Regional Commissioner, to whom the District Director certified his decision, affirmed the denial and in turn certified his decision here.

The adjustment application in this case was filed in June 1971, at which time the applicant alleged that although he is an intending nonpreference immigrant, he is not within the class of aliens excludable from admission under section 212(a)(14) of the

349

Immigration and Nationality Act, as amended, because as an "investor" and by regulation (8 CFR 212.8(b)(4)) he is not required to obtain the otherwise prescribed labor certification. Section 212(a)(14) describes as ineligible for visas and for admission to the United States:

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to special immigrants defined in section 101(a)(27)(A) (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), to preference immigrant aliens described in section 203(a)(3) and (6), and to nonpreference immigrant aliens described in section 203(a)(8); ... (8 U.S.C. 1182(a)(14))

The regulation (8 CFR 212.8(b)(4)), as it was when this adjustment application was filed, read:

(b) *Aliens not required to obtain labor certifications.* The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require a labor certification: ... (4) an alien who will engage in a commercial or agricultural enterprise in which he had invested or is actively in the process of investing a substantial amount of capital.

The applicant has testified that he is in the business of selling new shoes and that he has a retail store for this purpose in Huntington Park, California. He has presented evidence that he started this business in February 1971, with an initial investment of $18,000, the proceeds from the sale of a grocery market which he previously owned and operated for a year in Argentina. With that money he leased premises for his present retail business, fitted them out with furniture and fixtures, secured occupancy and seller's permits, and purchased stock in trade; and he now has one full-time and one part-time employee working in the business besides himself. He oversees, manages and directs this enterprise; monitors, and purchases its stock; and works, as well, as the cashier in the store.

The District Director in his decision states that the law is clear and without qualification in requiring a labor certification of a nonpreference immigrant who will be performing skilled or unskilled labor; that the work of a cashier is such labor; and that to perform it, the nonpreference immigrant must have the Secretary of Labor's certification, notwithstanding any investment he may have made; and that since a valid regulation may not go beyond the scope of the law it implements, the regulation here must be

350

read as restricting its benefits solely to the investor described therein who will not be performing skilled or unskilled labor in the United States. I believe that this is an unnecessarily rigid interpretation of section 212(a)(14).

It is certainly clear, as the District Director and Regional Commissioner indicate, that section 212(a)(14) was included in the law to assure protection for American labor from alien workers who would offer unwarranted competition. The House Committee on the Judiciary in recommending the passage of H.R. 2580, which contained what was to become the present section 212(a)(14), stated that it would assure among other things:

Safeguards to protect the American economy from job competition and from adverse working standards as a consequence of immigrant workers entering the labor market. (House Report No. 745, 89th Congress, 1st Session, August 6, 1965, page 18).

The Committee observed also that:

Section 212(a)(14) of the Immigration and Nationality Act is restated so as to require an affirmative finding by the Secretary of Labor that any alien seeking to enter the United States as a worker, skilled or otherwise, will not replace a worker in the United States nor will the employment of such alien adversely affect the wages and working conditions of individuals in the United States similarly employed. This required certification will be applicable to special immigrants (other than the parents, spouses, and minor children of U.S. citizens or permanent resident aliens), preference immigrants described in section 203(a)(3) and (6) and the nonpreference immigrants. (Id., page 21).

In considering all of this, it is not unreasonable to conclude that it was not the purpose of Congress in this section to discourage an alien's *bona fide* effort to establish and conduct his own business here, where his stake in that business is to be substantial and irrevocably committed, and where there are encouraging prospects for its success. It cannot be said in any real sense that the applicant's employment in a job that did not exist before he made his investment is unfairly competitive with American labor. His employment in his own business is not the "job competition" which the Congress wished to protect against. His conduct of his business does not "replace a worker in the United States" or "adversely affect the wages and working conditions of individuals in the United States similarly employed." His efforts have, in fact, created jobs for two American residents.

It is my opinion, therefore, that Congress did not intend the provisions of section 212(a)(14) to be applicable to the alien who can establish that he is seeking to enter the United States with the *bona fide* primary purpose of engaging in an enterprise in which he has already invested or is presently investing a substantial amount of capital. The regulation's requirement that the alien must have the intention of engaging in the enterprise in which he

351

has invested or is investing is deliberate. Its object is to have him participate full time in that enterprise, thereby assuring that he does not evade the certification requirement of section 212(a)(14) by merely making the investment and then devoting no effort or only part-time effort to the enterprise, while being employed elsewhere in competitio·. with American workers. The regulation contemplates that the investor's "engaging" in the enterprise will be to an extent which demonstrates an assumption of risk and responsibility for its direction and control. If he is engaged full time to the extent indicated above—and I find that the applicant here is—it is immaterial what his nominal job in the enterprise may be.

Before leaving this matter, some observations on related aspects should be made. Between the District Director's decision of January 18, 1973, and the Regional Commissioner's determination on February 22, 1973, a changed text of the relevant regulation (8 CFR 212.8(b)(4)) became operative: In order to further clarify the rule, there were published on January 12, 1973 (38 FR 1379), to become effective on February 12, 1973, requirements that the minimum capital investment be $10,000 and that the alien establish that he has had at least one year's qualifying experience or training. So the regulation now provides that the certification exemption is available to:

> An alien who establishes on Form I-526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

It has been administratively determined by the Service that any request for labor certification exemption as an "investor" filed previous to February 12, 1973, may be decided under either the current or previous regulation, whichever is more favorable to the alien. In his decision affirming the denial in the present case, and by way of dictum, the Regional Commissioner has stated that the applicant here would not qualify under the experience requirement of the present regulation either. He bases this conclusion on the holding apparently that self-employment in his grocery business in Argentina is different substantially from self-employment in a retail shoe store in the Los Angeles metropolitan area. With respect to that I would say the experience necessary to qualify under the present regulation need not be in the same kind of business.

The Service obviously is in no position to predict that the investor's enterprise will succeed. It may fail and force the investor to seek employment elsewhere and in competition with U.S.

resident workers. The regulatory requirement that he establish that he has had at least one year's experience or training qualifying him to engage in the enterprise is designed to give the Service some further measure óf assurance that he has at least the "know-how" to participate meaningfully in the operation of the enterprise which then presumably would have a reasonable chance to succeed. When a difference exists between the nature of the business in which the alien was previously engaged and that of the business in which he is now investing or has invested in the United States, he may be able to establish that his previous experience or training as an entrepreneur or manager for a year or more meets the experience or training requirement of the regulation.

The present application will be returned to the District Director for further consideration not inconsistent with the above.

**ORDER:** *It is ordered* that the application be remanded to the District Director for disposition in conformity with this opinion.